UNITED STATES, Appellee

v

DANIEL R. STRUCKMAN, Private,
U. S. Marine Corps, Appellant

20 USCMA 493, 43 CMR 333

*Lieutenant Kenneth N. Beth*, JAGC, USNR, was on the pleadings for Appellant, Accused.

*Commander Michael F. Fasanaro, Jr.*, JAGC, USN, was on the pleadings for Appellee, United States.

## Opinion of the Court

PER CURIAM:

As a result of rejecting proposed nonjudicial punishment for a seven-day unauthorized absence, the accused was called to the squadron office to confer with the commanding officer. The conference ended when the accused struck the commander in the face. The incident led to a charge against the accused of assault upon a superior commissioned officer in the execution of his office, in violation of Article 90, Uniform Code of Military Justice, 10 USC § 890.

The case was tried before a military judge sitting without court members. After he convicted and sentenced the accused for the assault and the unauthorized absence, he recommended clemency because of the "extremely aggravating circumstances" to which the accused had been subjected. Our reading of the record of trial convinces us there was more than aggravation meriting clemency.

Since the accused appeared to be smiling "with his face" when he entered the office, the commander asked him "what's so funny goofy"? The accused reported in a "military manner." Thereafter, he remained in the position of attention for a time while the commander examined his service record book. At one point, the accused asked permission to speak, but the commander told him he could

**494**

"speak when I tell you to." When that time came, the commander advised the accused of his rights under Article 31, Code, supra, 10 USC § 831, and proceeded to question him about his civilian background and his attitude toward the Marine Corps. In the course of questioning, he charged the accused with not being a man, and asserted he was a coward with about a two-foot "streak of yellow" down his back. Finally, he asked the accused to tell him "what . . . [he] would like." The accused answered that he would "like to see the Marine Corps flat on its back with its heels in the air." The commander regarded the comment as "an affront," and he admitted that it made him "mad."

According to a Government witness, the commander "arose hurriedly," went around his desk at a "faster than normal walk," approached the accused, and said "he represented . . . [the] Marine Corps, let's see you put me on my back." The accused testified that he understood the statement "as a challenge from one man to another and if I was sincere in what I said, I should hit him." Consequently, he turned from his position of attention and struck the commander. Immediately, the squadron first sergeant was "on" the accused and thrust him against the wall. Just then another officer entered the office, and the com-

mander directed the first sergeant "to call Security."

To us, the evidence portrays a situation in which the commander, by words and action, abandoned his position and his rank. In consequence, the accused's response to the words and conduct "did not, as a matter of law, detract from the authority and the person" of the commander, as a commander or as a commissioned officer. United States v Noriega, 7 USCMA 196, 198, 21 CMR 322 (1956). The findings of guilty, therefore, are not sustainable as a violation of Article 90, Code, supra.

The decision of the United States Navy Court of Military Review is reversed. The nature of the remaining offense and expiration of the period of confinement that was imposed make it inappropriate to continue the proceedings. United States v Evans, 18 USCMA 3, 39 CMR 3 (1968). We, therefore, set aside the findings of guilty and the sentence and order the charges dismissed.